UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARL TROJACEK, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-07-0867 |
| | § | |
| GATX FINANCIAL CORPORATION, | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER

This race and age employment discrimination case is before the court on defendant's motion for summary judgment (Dkt. 17).[1]  The court orders that defendant's motion for summary judgment be granted in part and denied in part.

## Background

Carl Trojacek, who is white, worked for GATX Financial Corporation for approximately 28 years.  At the time of his discharge on December 9, 2005, Trojacek was a 58 year old safety/standby attendant at GATX's Hearne, Texas Service Center. His responsibilities included setting safety monitors inside tank railcars that would monitor the levels of oxygen and carbon dioxide in order to ensure the cars were safe for workers to enter and perform repair and maintenance work.[2]  On November 23, 2005,  he referred to Robert Rekieta, a white man acting as his supervisor on that day, as the "H.N.I.C.," an abbreviation conceded by both sides to mean "Head Nigger in Charge."  Two black GATX employees,

---

[1]     The parties have consented to magistrate jurisdiction in this case for all purposes, including final judgment.

[2]      Def. Ex. A, Trojacek Dep., at 42-43.

Nate Lewis and Michael Polk,  overheard the remark and complained to Rekieta.  Rekieta

called GATX human resources manager, Susan Christenson, to inform her of the situation.

Christenson investigated and recommended to her corporate superiors in Chicago,

Terrence Heidkamp and William Groos, that Trojacek be fired for an "Intolerable Violation"

of GATX's Plant Rules.[3] Christenson's recommendation was based on her findings regarding

the November 23, 2005 incident, and the fact that Trojacek previously was disciplined in

1999 for calling a fellow employee a "nigger."  In that incident, Trojacek was determined to

have committed Intolerable Violation 10 ("any other act not listed above which evidences

dishonesty, serious misconduct or neglect on the part of the employee").  He was suspended,

and was warned that further violations could result in discharge.[4]  Relying on information

from Christenson, Heidkamp and Groos made the decision to fire Trojacek. While Heidkamp

and Groos made the ultimate firing decision, they did so based on information from

Christenson; they do not claim to have performed any independent investigation.[5]

Christenson has recommended termination of an employee 10 times, and GATX has acted

on her recommendation every time.[6]

---

[3]      *See* "An Employee Guide to Plant Rules," November 1990, Christenson Decl., Ex. 3.

[4]       Trojacek Dep, at 57-61.

[5]      *See* Heidkamp Decl. ¶ 6; Groos Decl. ¶ 6.

[6]      GATX answer to Interrogatory 8.  A decision-maker who merely rubber stamps the firing
        recommendation of a subordinate acts as a conduit for the subordinate's improper motive.
        *Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001).   The court considers Christenson the
        decision-maker for purposes of determining whether discriminatory animus exists.

Trojacek contends that his termination was based on his race in violation of Title VII

and 42 U.S.C. § 1981, and his age in violation of the ADEA.

## Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the

moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The  party

moving for summary judgment has the initial burden to prove there are no genuine issues of

material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th

Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable

jury to find for the nonmoving party.  *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001).

"An issue is material if its resolution could affect the outcome of the action."  *Terrebonne*

*Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).  If

the movant meets this burden, "the nonmovant must go beyond the pleadings and designate

specific facts showing that there is a genuine issue for trial."  *Littlefield v. Forney Indep. Sch.*

*Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951,

954 (5th Cir. 1995)).

If the evidence presented to rebut the summary judgment is not significantly probative,

summary judgment should be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-

50 (1986).  In determining whether a genuine issue of material fact exists, the court views

the evidence and draws inferences in the light most favorable to the nonmoving party.  *Id.*

at 255.

## Analysis

The process for analyzing summary judgment motions in employment discrimination

cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 148-49 (2000), succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will
> depend on a number of factors.  Those include the strength of the plaintiff's
> prima facie case, the probative value of the proof that the employer's
> explanation is false, and any other evidence that supports the employer's case
> and that properly may be considered on a motion for judgment as a matter of
> law.

The court must draw all reasonable inferences in favor of the non-movant, and disregard all

evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51.

Trial courts should not treat discrimination differently than other ultimate questions of fact

for purposes of Rule 50 or 56. *Id.* at 148.

***Reverse Discrimination***.[7]  GATX first argues that Trojacek's race discrimination

claim must fail because he was replaced by a white male.  It is not  necessary for Trojacek

to prove he was replaced by someone outside his racial group.  A plaintiff in a disparate

treatment discharge case may meet his prima facie burden by showing that others similarly

situated were treated more favorably. *Okoye v. University of Texas Houston Health Science*

*Center*, 245 F.3d 507, 512-13 (5th Cir. 2001).

GATX next argues that it had a legitimate non-race based reason for discharging

Trojacek:  his second Intolerable Violation of Plant Rules.  In response, Trojacek does not

---

[7]    Because the analytical framework for Title VII and § 1981 discrimination claims are the
same, the court addresses those claims together. *Walker v. Thompson*, 214 F.3d 615, 625
(5th Cir. 2000).

deny that he committed the offense for which GATX contends it fired him.  But he argues

that he was treated differently than black employees at GATX who use racial slurs, including

"nigger," and are not disciplined, much less fired.

Dissimilar treatment of similarly situated employees outside of a plaintiff's protected

group is an accepted method of proving a Title VII violation.  *See Nieto v. L&H Packing Co.,*

108 F.3d 621, 623 n.5 (5th Cir. 1997).  It is undisputed that GATX has never disciplined a

black employee for using a racial slur such as "nigger."[8]  There is some evidence that

complaints by white employees of racial slurs by black employees fell on deaf ears at

GATX.[9]  Rekieta, a supervisor at GATX, knew that black employees used the word nigger

at work, but admitted that Trojacek is the only employee he ever reported to Christenson for

doing so.[10]  The court finds a fact issue as to whether GATX treated Trojacek differently than

black employees when he was terminated for using a racial slur.[11]

---

[8]      Christenson Dep., at 24-25.

[9]      Trojacek Dep., at 82-108.

[10]     Rekieta Dep., at 9-14.

[11]     GATX argues that Trojacek has not shown that any of the black employees who allegedly
         used racial slurs had previously been disciplined for doing so, as he was.  But, if black
         employees were never disciplined for using racial slurs, then no black employee could ever
         be similarly situated to a white employee disciplined for using racial slurs, creating a catch-
         22 that would effectively prevent any white employee from obtaining relief for clearly
         racially discriminatory treatment.

***Age Discrimination.***[12] Trojacek must present some evidence that he was discharged because of his age. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007). Trojacek has not presented evidence that a similarly situated younger employee was treated differently than Trojacek, nor any other evidence of age-based discrimination. The fact that Trojacek was over 40 years old at the time of his discharge is a necessary element of his claim, but age alone is not enough to create a jury issue. Trojacek argues that Christenson's failure to consider his 28-year employment history with the company somehow justifies an inference that she recommended his discharge because of his age. The court fails to see the logic in this argument. To the contrary, Christenson's testimony that she did not consider Trojacek's tenure with the company at all[13] weighs against an inference that his discharge was age related. Nothing in the record indicates any connection between the discharge decision and Trojacek's age. GATX is entitled to summary judgment on this claim.

**Conclusion**

For the reasons discussed above, GATX's motion for summary judgment (Dkt. 17) as to Trojacek's Title VII and § 1981 race discrimination claims is denied. GATX's motion for summary judgment as to Trojacek's ADEA claim is granted.

---

[12]  Age discrimination under the ADEA is analyzed under the same analytical framework as Title VII discrimination. *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 n.3 (5th Cir. 1996).

[13]  Christenson Dep., at 45-46.

6

Signed at Houston, Texas on May 12, 2008.

Stephen Wm Smith
United States Magistrate Judge